## In re BROWN.

United States District Court
N. D. New York.
Argued Feb. 14, 1949.

Submitted March 17, 1949.
Decided Nov. 22, 1950.

Albert J. Oot, Syracuse, for trustee, Frank J. Cragg, Jr.

Marvin, Hand, Searl, Bush & Crannage, Syracuse, N. Y., for bankrupt.

Hancock, Dorr, Ryan & Shove, Syracuse, N. Y., for petitioning creditors.

Lionel Grossman, Syracuse, N. Y., for petitioning creditor.

Smith, Sovik, Levine & Richardson, Syracuse, N. Y., for receiver, Salt Springs Nat. Bank, a creditor.

BRENNAN, Chief Judge.

This particular chapter in the tangled financial affairs of Julian Brown involves the order of the Referee in Bankruptcy, dated October 27, 1948, which in substance permits or allows the trustee to pay the allowed claims in the bankrupt's estate with interest to May 22, 1936, and denies and disallows interest upon said claims after that date.

The history of this proceeding is long, involved and marked by charges, counter-charges, and unpleasantness, referred to by the Circuit Court of Appeals in one of its decisions in this much-litigated proceedings. See Syracuse Engineering Co. v. Haight, 2 Cir., 110 F.2d 468 at page 469.

It is sufficient to say that there has come into the possession of the trustee cash which represents the bankrupt's interest in his mother's estate, the amount of which it seems to be agreed upon is sufficient to pay the claims in full, with interest to May 22, 1936, and take care of all expenses and allowances, the amounts of which are still undetermined.

In 1948 in a desire to accommodate creditors and to speed the closing of this estate, the trustee brought on for a hearing before the Referee the claims of Albert Pick Co., Inc. and Claude Neon Lights, Inc. with the purpose of establishing a pattern to be used by the trustee in the payment of the final dividend. The actual point involved was the question of the al-

lowance of interest. Affidavits were submitted. The Referee made his decision. The proceedings were re-opened, and additional affidavits filed. The Referee again made his decision, including findings of fact and conclusions of law, and the order sought to be reviewed was thereafter entered. No question is raised here as to the propriety or regularity of the proceedings involved and the real dispute involves the question of interest allowance.

It is understood that the bankrupt, while he seeks the reversal of the Referee's order, insofar as it allows interest to May 22, 1936, does not in fact seriously urge his contention. In any event, the decision herein will dispose of same.

It appears that the bankrupt's financial affairs have occupied the attention of the courts intermittently since about 1931, but the events pertinent to this decision began with the filing of an involuntary petition in bankruptcy against the bankrupt on May 22, 1936. Answers were interposed denying insolvency. Hearings were held. Judge Bryant found Brown to be insolvent, and directed the entry of an order of adjudication. The order was reversed, and new trial ordered. Syracuse Engineering Co. v. Haight, 2 Cir., 97 F.2d 573. The issues were retried and an order of adjudication again entered, which was affirmed by the Circuit Court of Appeals on March 4, 1940. Syracuse Engineering Co., Inc. v. Haight, 110 F.2d 468. A trustee was thereafter elected, and an order of appointment entered by the Referee was sustained by the District Court upon review, and further sustained by the Circuit Court of Appeals on March 10, 1941. In Re Brown, 7 Cir., 118 F.2d 198. The proceeding followed the regular but sharply disputed course of an ordinary bankruptcy proceeding, and it became apparent that the question of the disposal by the trustee of the interest of the bankrupt in the estate of his mother would be of vital importance in the marshaling of the assets and the subsequent payments to the creditors. Such interest was not sold by the trustee, but was retained by him, and upon the arrival of the bankrupt at the age of sixty years, the cash value of such interest came into the hands of the trustee as an asset of this estate.

In this proceeding the Referee found as a fact that the trustee should have promptly disposed of the interest of the bankrupt in his mother's estate; that certain large creditors acquiesced in the action or plan of the trustee which amounted to a gamble, and that since the question of the allowance of interest is an equitable matter, no interest should be allowed after the date of the filing of the petition; to wit, May 22, 1936. The Court is well aware of the requirement that such a finding will not be reversed unless clearly erroneous. General Order in Bankruptcy 47, 11 U.S.C.A. following section 53; Morris Plan Bank v. Henderson, 131 F.2d 975. Here, this Court and the Referee are in the same position to appraise the evidence. The Referee took over this bankruptcy July 1, 1947, after it had been litigated before another Referee and before the courts for about ten years. The problem here was submitted to him upon affidavits; that is, no oral evidence was taken. The Court, therefore, has equal facilities in determining the questions involved. In Re Caplan, 2 Cir., 149 F.2d 731; In Re Slutzkin, D. C., 60 F.Supp. 567 at page 570; In Re Jersey Materials Co., D. C., 50 F. Supp. 428.

It is not disputed that where, as here, the estate becomes solvent in the course of administration, the general rule is that creditors are entitled to the payment of interest upon their allowed claims to the date of payment rather than to the date of the inception of bankruptcy proceedings, which is the rule as applicable to insolvent estates. Collier on Bankruptcy, 14th Ed., Vol. 3, page 1838, etc., and cases cited; In Re Realty Associates Securities Corp., 66 F.Supp. 416 at pages 421-422 and cases cited; affirmed Kelley v. Manufacturers Trust Co., 2 Cir., 162 F.2d 350; modified 163 F.2d 387.

The Referee recognized that the above rule was made flexible by the decision in Vanston Committee v. Green, 329 U.S. 156, at page 165, 67 S.Ct. 237, at page 241, 91 L.Ed. 162, which in substance pro-

vides that the allowance of interest in bankruptcy proceedings " * * * has been a balance of equities between creditor and creditor or between creditors and the debtor."

As stated above, the Referee found and concluded that the retention by the trustee, with the acquiescence of the creditors, of the bankrupt's contingent interest in his mother's estate so balanced the equities that no interest should be paid upon allowed claims after the filing of the petition. Therefore, the task of this Court is to determine the equities as disclosed by the record.

It would serve no useful purpose to discuss at length the contents of the affidavits filed in this proceeding which bear upon the question of the efforts of the trustee to dispose of the contingent interest of the bankrupt above referred to. One only needs to read the decision of the Syracuse Engineering Co., Inc., v. Haight, 110 F.2d 468, at page 470, in which the question of the value of such interest was discussed to appreciate the difficulties faced by the trustee. It appears without contradiction that the bankrupt himself refused to cooperate in the matter of obtaining insurance upon his life, which was an important factor in the determination as to whether or not such interest had a fair market value or simply a gambling value. The Court sees no reason to reject the affidavits made by the former Referee and reputable counsel which indicate a persistent effort to obtain some definite offer for such interest.

It is correct that the papers indicate that no public offering of sale was made of the interest involved, but it must be borne in mind that the asset itself was not the usual asset administered by a trustee. The market, therefore, was limited and the inability of those interested to obtain a firm offer from any interested purchaser no doubt lead the former Referee, the trustee, his attorney and some of the creditors to conclude that a public offering would be futile. The bankrupt himself persisted in his refusel to cooperate insofar as the issuance of insurance was concerned, which was also an important factor in the matter of the liquidation of this particular asset. The evidence discloses no demand on the part of the bankrupt or any creditor upon the trustee or Referee that this particular asset be reduced to cash, but rather the action of the trustee in holding the asset until the contingency was removed seems to have been acquiesced in by all parties.

At any rate, subsequent events proved beneficial to the creditors, because by the lapse of time the full amount of the bankrupt's beneficial interest in his mother's estate came into the hands of the trustee, and it is rather difficult to conclude in the light of the ultimate result that any prejudice resulted. Certainly, if a sale had been made it could not have been expected that the face value of the interest would have been obtained. The creditors thereby would have suffered, and Brown could not have hoped to obtain any part of the sale price.

The bankrupt's attitude throughout the proceeding is not one that appeals for equitable consideration. On the other hand, there is nothing in the record which would indicate that the two creditors whose claims are before the Court have by their action or lack of action placed themselves in a position where the general rule as to allowances of interest in solvent estates shall not be applied to them. Since all parties seem to have agreed that the decision of the Referee in this proceeding would be followed in the payment of the final dividend to each of the creditors, there seems to be no reason why the decision, insofar as it affects the two particular claims before the Court, should not be applied to all creditors.

Another question, insofar as it affects the claim of the Salt Springs National Bank, has been submitted to the Court upon stipulated facts and upon a filed stipulation of the interested parties.

It appears that on April 9, 1936, the receiver of the Salt Springs National Bank obtained a warrant of attachment in an action against the bankrupt to recover a money judgment. The Sheriff of Onondaga County under the warrant levied upon certain assets on April 14, 1936. On May 20, 1936, the receiver recovered a

judgment against the bankrupt in the sum of about $130,000, and on May 21, 1936, the Sheriff levied upon all of the bankrupt's property under an execution issued upon said judgment. It appears by inference that the property held either under the warrant of attachment or by virtue of the execution, or both, was released by the Sheriff to the trustee, and subsequently liquidated as part of the assets of the bankrupt's estate. No proceeding was taken under Section 67, sub. a(4) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. a(4), to determine the right of the parties, and the creditor does not now urge that the lien of the attachment or the execution was valid, but rather takes the position that its action in the matter of the attempted enforcement of its claim, which ripened into the judgment as above stated, and by reason of its opposition to the prior involuntary bankruptcy proceedings, it has established equities superior to those of any other creditor; and that interest upon its claim should be directed to the date of payment prior to the payment of interest to any other creditor.

This contention brings up for consideration prior litigation, and a previous involuntary petition in bankruptcy filed against Brown and subsequently dismissed by the District Judge. His decision was affirmed by the Circuit Court of Appeals. In Re Brown, 2 Cir., 87 F.2d 306. The difficulty with creditor's contention is that until the decision of the Circuit Court of Appeals on March 4, 1940, Syracuse Engineering Co. v. Haight, supra, all of the effort of this particular creditor was directed towards upsetting the adjudication in bankruptcy, so that it might receive a payment of its claim in full rather than to receive what was then expected to be a proportionate amount of its claim upon an equal basis with the other creditors. It may be correct that some of the steps taken by this particular creditor and the delay caused by proceedings instituted in its behalf actually resulted in a benefit to the creditors. Its actions, however, were actuated by self interest, and up to a certain point was hostile to the interest of the general creditors. The record is barren of any evidence which would justify the placing of this particular creditor in a different position from other creditors, insofar as the equities in the matter of payment of interest is concerned.

Findings Nos. 9, 10, 11 and 14 are reversed, and the Conclusion of Law of the Referee is vacated.

The remaining findings are made the findings of this Court, and this Court finds in addition that the trustee and interested creditors acted in a proper and legal manner in the matter of the liquidation of the asset consisting of the interest of Julian S. Brown in the estate of his mother.

The Court concludes that the creditors in this estate are entitled to payment in the face amount of their respective allowed claims, with interest to the date of payment at six percent.

It is deemed advisable to add a word of explanation. The outline of the above decision was dictated within a short time after the controversy was submitted in 1949. The decision was delayed for the reason that the amount of allowances had not been fixed, and it was apparent that the question of interest might be entirely academic, depending upon the total amount of the allowances. The Court is now informed that all creditors have been paid in full, with interest to May 22, 1936; that allowances have been made by the Referee, and upon payment of same there will remain a surplus in the hands of the trustee in the amount of approximately $25,000.

An argument was made that, since the value of the use of money in the last ten or twelve years has declined, interest, if allowed, should be fixed at a rate less than that recognized as the legal rate in the State of New York. The argument is now of no importance, since it is self-evident that only a pro rata payment of interest can be made. The allowed claims are so large in amount and the time of payment being about 1949, it is apparent that, even if interest is fixed at a lesser rate than six percent, same could not be paid in full.

An appropriate order will be submitted accordingly. If same is not agreed upon, it may be settled on three days' notice.